UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


IN RE GENETICALLY MODIFIED      )        4:06MD1811 CDP
RICE LITIGATION                 )


**This Order Relates to**:
*Riviana Foods, Inc. v. Bayer AG, et al.*        4:08CV375 CDP

## <u>MEMORANDUM AND ORDER</u>

This order deals with the motions for summary judgment and motions to

exclude or limit expert witness testimony related to the claims of plaintiff Riviana

Foods, Inc. against the Bayer defendants.  These claims are set for trial on April

19, 2010.

Riviana is a rice processor and exporter with operations in Texas and

Arkansas.  Riviana claims that it was damaged when the USDA announced that

Bayer's genetically modified rice had contaminated the U.S. rice supply in 2006.

Riviana brings claims against Bayer under theories of negligence, negligence *per*

*se*, and constructive fraud.[1]

Riviana also brings claims against Bayer on behalf of certain of its

---

[1] The parties indicate that Riviana is no longer seeking a declaratory
judgment for contribution and indemnity from Bayer for any liability to its
customers.

"affiliates."  The affiliates are European companies that are partly owned by

Riviana.  Riviana sold U.S. rice to the affiliates, and the affiliates in turn sold that

rice to European customers.  Riviana alleges that the affiliates were damaged by

the contamination, and the affiliates have assigned to Riviana their claims against

Bayer, Riceland Foods and Producers Rice Mill.  I previously ordered that the

claims involving Riceland and Producers will be the subject of a separate trial.[2]

## A.   <u>Bayer's Motion for Summary Judgment</u>

Bayer has moved for summary judgment on several grounds.  Bayer argues

that Riviana's claims are preempted by federal law, that the economic loss

doctrine bars recovery for Riviana's damages, that Riviana's affiliates' claims

should be dismissed for failing to plead and prove foreign law, that Riviana should

not be permitted to recover its costs of mitigation or punitive damages, and that

Riviana cannot succeed on its claims of negligence *per se* and constructive fraud.

For the reasons stated below, I find that Riviana and its affiliates' claims are not

preempted by federal law or prohibited by the economic loss doctrine and are not

barred by a failure to plead or prove foreign law.  I also find that Riviana may

submit its claims for its costs of mitigation and for punitive damages.  However,

Bayer is entitled to summary judgment in its favor on Riviana's claims for

_____

[2] Order dated March 3, 2010 [#1303].

negligence *per se* and constructive fraud.[3]

### 1.   **Federal Preemption**

Bayer argues that all of Riviana's and its affiliates' claims are expressly preempted by the Plant Protection Act, 7 U.S.C. § 7756(a).  On April 16, 2009, I ruled from the bench on a similar motion that Bayer filed related to all of the cases in this MDL proceeding.[4] I will deny the instant motion for the same reasons stated on the record during the April 16th hearing.  The Plant Protection Act does not preempt the common-law claims brought by Riviana and its affiliates.

### 2.   **Economic Loss Doctrine**

Bayer argues that the economic loss doctrine, as applied in Texas, bars all of Riviana's claims.  Riviana responds that Arkansas law governs this case and that, even if Texas law applies, Bayer applies Texas' economic loss doctrine incorrectly.  For the reasons stated below, I find that Texas law does not apply to

---

[3] As always, in ruling on all the summary judgment motions, I have viewed the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[4] April 16, 2009 minute entry order [#1200]; transcript filed April 20, 2009 [#1208], pages 47 to 49.

this case, however, even if Texas law were applicable, Riviana's claims would not be barred by the economic loss doctrine.

As a threshold matter, I must determine whether Texas law applies to this case. When considering a question of state law, an MDL court must apply the state law that would have applied had the case not been transferred to the MDL. *In re Temporomandibular Joint (TMJ) Implants Products Liability*, 97 F.3d 1050, 1055 (8th Cir. 1996). "A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of America v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). This case was transferred to the MDL from a United States District Court in Texas, therefore, I will apply Texas' choice of law rules.

"Texas uses the Restatement's 'most significant relationship' test to decide choice-of-law issues." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848-49 (Tex. 2000). In a tort case, Texas looks to such factors as the place of injury, the place of allegedly negligent conduct, the domicile of the parties, the relevant policies of the forum and domiciliary states, and ease in the determination and application of the law to be applied. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848-49 (Tex. 2000) (citing Restatement (Second) of Conflict of laws §§ 6(2), 145(2) (1971)).

The record in this case demonstrates that the parties' injuries and relevant activities primarily occurred in Arkansas.[5]  According to the parties' submissions, Riviana suffered seven types of injury totaling approximately $3 million in damages related to its operations in Arkansas.  It suffered approximately $900,000 in "general" damages that were not explicitly associated with a particular state, and it suffered approximately $170,000 in damages to its operations in Texas, based on only two types of injury.

Although Riviana's general damages are not specifically identified with Arkansas, they appear to have arisen from its Arkansas activities.  The general damages are related to reprocessing, transporting, and storing rice that Riviana had shipped to Europe.  All of Riviana's contracts with its European buyers indicate that it shipped its rice to Europe from its Arkansas mills and that the rice returned from Europe was unloaded in Arkansas.

Similarly, all of the contaminated rice that Riviana purchased for shipment to the EU was grown and milled in Arkansas.  The USDA inspected Riviana's shipments in Arkansas.  The parties' motions for summary judgment demonstrate

---

[5] Neither party has provided the Court with a current itemization of Riviana's damages, therefore I have relied on the reports of Bayer's damages expert, Quentin Mimms [#2115], and Riviana's now-withdrawn damages expert, Lisa Ahern [#2544], to determine the extent and location of Riviana's losses.

that Riviana's claims originating from its Arkansas activities will be the focus of the parties' disputes at trial. For instance, Bayer argues that Riviana should not be permitted to recover the costs of modifying its Brinkley, Arkansas facility and that the Arkansas facility's profits are a factor in determining damages.

Bayer, however, argues that the place of injury favors Texas because Riviana paid all of its expenses from its headquarters in Texas. Bayer does not cite to any receipts, spreadsheets, or any other evidence supporting its claim that Riviana, in fact, paid its expenses for its Arkansas activities from its Texas headquarters. In addition, the cases Bayer cites for the proposition that all corporations suffer economic losses at their headquarters as a matter of law do not support its assertion. To the extent that these cases found the place of injury to be a corporation's headquarters, most did so only after finding that there was no other evidence of the place where plaintiff suffered harm. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir. 1991); *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524 (7th Cir. 1981). Some of these cases applied different standards, such as standards for determining jurisdiction, *see Dakota Industries*, 946 F.2d 1384; *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145 (2d Cir. 1991). One case does not actually find that the place of a corporation's economic losses is its headquarters, but instead states that the place

of injury of a corporation is the place of a "legally significant act," such as the place designated for performance of a contract. *See Weltover*, 941 F.2d at 153. Bayer's authority is not on point, and the place of the bulk of the injuries was Arkansas.

The remaining factors do not diminish Arkansas' greater interest in this case. Riviana's headquarters are in Houston, Texas and the forum state is Texas, but no other factors favor the application of Texas law. The allegedly negligent acts occurred in Louisiana, and none of the Bayer entities are incorporated or have a principal place of business in Texas. As a result, Arkansas law will govern the issues in this case.

Bayer does not argue that Arkansas law precludes claims for economic loss. As I have previously noted, Arkansas law does not recognize the economic loss doctrine as a bar to claims like this.[6] For the same reasons previously stated, I will deny Bayer's motion to the extent it relies on the economic loss doctrine, because Arkansas, not Texas, law applies to these claims.

Even if Texas law governed this case, Riviana's claims would not be barred. Texas applies the traditional economic loss doctrine. "The rule generally

_____

[6] October 15, 2007 order [#377] at p.9-10; December 9, 2009 order [#2075] at p. 4-6.

precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). Texas recognizes the doctrine in three scenarios. First, the doctrine prevents a plaintiff from asserting tort and breach of contract claims against a defendant for the same injury. *Id.* Second, the doctrine bars products liability claims where the buyer may also recover for the same injury under quasi-contract theories, such as breach of implied warranties. *See Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793 (Tex. Ct. App. 2007). Third, the doctrine prevents a plaintiff from asserting a tort claim against a third party, even when there is no contractual privity between the two, so long as the plaintiff could have recovered for the same injury by a contract action against another. *Id.* The third variant of the doctrine is at issue here, as there was no contract between the parties and Riviana never purchased rice, contaminated or otherwise, from Bayer.

There is nothing in the record indicating that Riviana could recover its damages from any other party under a contract theory. Riviana alleges that the contamination forced it to begin testing its rice and to clean its facilities, caused its European orders to decrease, prevented it from delivering rice to Europe, increased its transportation and storage costs, and caused it to modify one of its rice mills. There are no contracts, communications, or any other documents in the

record indicating that Riviana could recover these losses under a contract theory from Bayer or any other entity, nor does Bayer argue that there are.  As a result, the doctrine does not apply to Riviana's claims.

Bayer presses the application of a much broader variant of the rule, which would bar recovery for economic losses in all torts, regardless of whether the parties had entered into a contract, or whether the plaintiff could have recovered in contract against any other entity.  The language that Bayer quotes in its brief seems to indicate its version is a valid application of the rule in Texas.  It has artfully found language stating that "Texas courts have consistently applied the economic loss rule to preclude tort claims between parties who are not in contractual privity" and that "economic damages are not recoverable unless they are accompanied by actual physical injury or property damage."  While these quotes accurately reflect Bayer's position, they do not properly reflect the state of the law in Texas.

The first quote is taken from *Sterling Chemicals*, but that case states explicitly that the doctrine only applies to bar tort claims when the plaintiff could have also recovered for the same injury in contract.  *See Sterling Chemical*s, 259 S.W.3d at 796-97.  The court in *Sterling Chemicals* provided several case illustrations demonstrating this rule using many of the same cases that Bayer cites

in its brief.  In each illustration, a party to a contract was injured by some defect in a product or service that was the subject of the contract.  *Id.* at 797-98.  The buyer in each case brought a tort claim against someone other than the party it had contracted with.  The buyers were not in contractual privity with these third parties, but the buyers' claims in tort were barred by the economic loss doctrine, because they could have recovered for the same injury through breach of contract claims against the parties with whom they had originally contracted.

In the case that Bayer relies upon most, *City of Alton*, a water company and a city had a dispute about sewer lines that the city had installed.  *City of Alton*, 277 S.W.3d at 140-41.  The water company brought claims against the city for breach of contract and for other contract remedies.  The water company also brought claims for the same injuries in tort against the sub-contractors that installed the sewer pipes.  Although the water company was not in contractual privity with the sub-contractors, the court of appeals found that the water company's claims against the sub-contractors were barred by the economic loss doctrine.  *Id.* at 153-54.  This and Bayer's other cited cases are consistent with the doctrine as stated in *Sterling Chemicals*.  Because Riviana's claims are not barred by the doctrine as described in that case, its argument that Riviana's claims should be dismissed would have failed even if Texas law were applied to this case.

- 10 -

**3.** **Affiliates' Claims – Foreign Law**

Bayer makes several closely related arguments that Riviana's affiliates' claims should be dismissed as a matter of law for failure to plead foreign law, for failing to meet their burden of proof under foreign law, and because economic losses are not available under the law of the affiliates' home countries.  The parties agree that the law of the affiliates' home countries will govern the affiliates' claims against Bayer.  I conclude that there was adequate notice that foreign law is at issue in this case.  I also conclude that disputes remain about both the law and the facts, and so I will deny summary judgment.

The affiliates whose claims Riviana asserts here are located in the United Kingdom, France, Germany, and Belgium.  The issue of foreign law was first raised by Bayer in its motions for summary judgment.  Each party has briefed the law of the relevant jurisdictions with respect to the economic loss doctrine.  The parties primarily rely on two treatises and do not cite any primary authority aside from a few cases that were summarized in these treatises.  The treatises cited are not currently available to the Court and the parties have not provided excerpts of the two texts on which they primarily rely, although, Riviana has provided an excerpt from a different text in a supplemental briefing.  Under Rule 44.1, Fed. R. Civ. P., the parties could have submitted cases, statutes, treatises, casebooks, legal

articles, or affidavits from experts with their briefs. At present, I am unconvinced that the parties have accurately represented the law of the foreign jurisdictions.

Bayer first argues that the affiliates' claims should be dismissed because foreign law was not pled in the complaint. "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1; Fed. R. Civ. P. 44.1 adv. cmte. note (1966) (stating that notice "may, but need not be, incorporated in the pleadings."). Notice of an issue of foreign law must be given in a reasonable time under the circumstances. Fed. R. Civ. P. 44.1 adv. cmte note (1966).

Even assuming that both parties did not have notice until January 22, 2010, when Riviana filed its response to Bayer's motion, the notice was reasonable. Trial in this case is set for April 19, 2010. The parties will have had nearly four months, at a minimum, to prepare their presentations of foreign law before trial. The affiliates' claims are primarily negligence claims – a relatively well-settled area of law in each jurisdiction. Even if I were to find the period of notice was unreasonable, I would not grant Bayer's motion for summary judgment, but would simply apply Arkansas law to these claims as well. *See* Wright & Miller, 9 Fed. Prac. & Proc. Civil (3d ed.) § 2443 (2008) ("If a party fails to give sufficient notice, the court is not obligated to apply the relevant foreign law and ordinarily

will apply the forum's law.").

Similarly, Riviana's failure to authoritatively prove the relevant law from the foreign jurisdictions at this stage does not require dismissal of its affiliates' claims. If a party seeking relief fails to prove the substance of the relevant foreign law, a court may grant relief under the law of the forum; it need not dismiss the party's claim. *See In re Avantel*, 343 F.3d at 321-22 ("[I]t is generally agreed that the law of the forum should apply when foreign law is not proved.") (quotes omitted); *Cavic v. Grand Bahama Development Co., Ltd.*, 701 F.2d 879, 882-83 (11th Cir. 1983); Restatement (Second) of Conflicts Section 136, comment h, at pp. 378-79 (1971).

I am also not convinced that the economic loss doctrine as applied in the foreign jurisdictions bars the affiliates' claims. On a motion for summary judgment, it is the moving party's burden to prove that the non-moving party cannot succeed on an essential element of its case. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001). The party moving to apply foreign law has the burden of proving its substance to a reasonable certainty. *In re Avantel*, 343 F.3d 311, 322-22 (5th Cir. 2003). A court should hesitate to grant summary judgment if the substance of the relevant law is doubtful. *See Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d

207, 211 (8th Cir. 1976).  Although the parties have submitted arguments on the

economic loss doctrine in Europe, they have not submitted sufficient information

for me to determine whether the doctrine as applied in the relevant countries bars

these claims.  This issue must remain for trial.

### 4.   Non-Negligence Claims

Bayer is entitled to summary judgment on Riviana's negligence *per se*

claims, for the same reasons I granted summary judgment to Bayer in the producer

bellwether cases.[7]  Riviana also asserts claims for constructive fraud both on its

own behalf and on behalf of its affiliates.  Bayer argues that Riviana's claim

should be dismissed because it did not have a relationship with Riviana and

because it did not owe Riviana any special duty.

Under both Texas and Arkansas law, "[c]onstructive fraud is a type of fraud

based on a breach of a legal or equitable duty which the law declares to be

fraudulent because of its tendency to deceive others, regardless of the moral guilt,

purpose, or intent of the perpetrator."  *Evans Indus. Coatings, Inc. v. Chancery

Court of Union County, Third Div.*, 870 S.W.2d 701, 703-04 (Ark. 1994); *see also

In re Estate of Kuykendall*, 206 S.W.3d 766, 770-71 (Tex. Ct. App. 2006).  In

---

[7] October 9, 2009 order [#1604] at p.13-24 ; December 9, 2009 order
[#2075] at p. 3-4, 9-10.

constructive fraud, a plaintiff need not prove intent because the necessary intent may be inferred from the relationship of the parties.  37 C.J.S. *Fraud* § 5 (2009) (citing *Country Cove Development, Inc. v. May*, 150 P.3d 288, 294 (Idaho 2006)).

Here, Riviana and Bayer do not have the type of relationship necessary to support a claim of constructive fraud.  Riviana does not claim that Bayer owed it a fiduciary duty or that it had any relationship whatsoever with Bayer.  Riviana, however, claims that Bayer's legal duty to report the contamination to the USDA and Bayer's knowledge that, if Bayer did not report the contamination, the rice industry would be harmed, qualifies as a sufficient relationship.  These duties, though, do not amount to the type of relationship from which an intent to defraud can be inferred.  First, Bayer's duty to report its discovery of contamination flows to the USDA, not to Riviana, therefore, Bayer's failure to report does not imply an intent to defraud Riviana.  Second, Bayer's generalized knowledge that the rice industry would be harmed by its failure to report does not create a special relationship between Bayer and every member of the rice industry, such that a court can infer that Bayer intended to defraud each member of the rice industry, in general, and Riviana, in particular.

Riviana also argues that the law of constructive fraud no longer requires a relationship between the parties.  It cites to Arkansas cases that state that a

fiduciary relationship is not necessary to support a claim of constructive fraud.
*See South County, Inc. v. First Western Loan Co.*, 871 S.W.2d 325, 327 (Ark.
1994) ("[T]he breach of a fiduciary duty is not the only element, nor is it always an
essential element, required to prove a case of constructive fraud.").  Of course, this
assertion is true.  A fiduciary relationship, specifically, is not necessary.  For
instance, Arkansas courts also allow constructive fraud claims in "rescission of
contracts or deeds" cases as well.  *Id.*  However, there is no indication that
Arkansas is willing to consider the doctrine in the absence of any relationship at
all.

Similarly, Riviana's reliance on a footnote from a federal case applying
Alabama law is unpersuasive.  In that case, the court noted that, hypothetically,
when an entity affirmatively misrepresents a fact to an individual or group of
individuals, then it is possible that the parties have a sufficient relationship to
avoid summary judgment on a claim for constructive fraud.  *Abrams v. Ciba
Specialty Chemicals Corp.*, 663 F. Supp. 2d 1220, 1231 n.15 (S.D. Ala. 2009).
Here, Riviana does not claim that it had a relationship even this tenuous with
Bayer.

Finally, Riviana argues that, because Bayer's actions injured a public
interest, there is no need for Riviana to prove the relationship element of

constructive fraud.  Riviana cites a common formulation of the rule in support,
stating that "a constructive fraud is a breach of either legal or equitable duty
which, irrespective of moral guilt of the fraudfeasor, the law declares fraudulent,
because of its tendency to deceive others, to violate public or private confidence,
or injure public interests." *Bridges v. United Sav. Ass'n*, 438 S.W.2d 303, 306
(Ark. 1969).  This formulation of the rule requires both a special relationship *and*
injury to the public interest.  Nothing in Riviana's filing supports its claim that
meeting the public interest element of this test renders the special relationship
element superfluous.  Without a special relationship, there is no reason for a court
to presume an intent to defraud, as previously described.  Furthermore, even if I
were to adopt Riviana's formulation of constructive fraud, Riviana has provided
no authority for its claim that Bayer's actions in this case injure a public interest
within the meaning of this rule.  As a result, Bayer is entitled to summary
judgment in its favor on Riviana's claim for constructive fraud.

### 5.   __Damages from Mitigation__

Bayer argues that Riviana should be precluded from recovering the costs of
converting its Brinkley plant from a brown rice plant to a white rice plant.  First,
Bayer claims that LL Rice contamination was not the cause of Riviana's
modifications to the plant.  Second, Bayer argues that Riviana suffered no loss

from modifying its plant because the plant subsequently earned a profit. For the reasons stated below, I find that Riviana may submit its claims for renovating its Brinkley plant.

There is evidence in the record that, before the U.S. long-grain rice supply was contaminated with LL Rice, Riviana's Brinkley plant primarily served the European market and regularly earned a profit of more than $1 million per year. After the contamination was discovered, the orders from its European customers decreased, as Europe had effectively closed its borders to the type of rice that Riviana milled at its Brinkley plant. Shortly after this decrease in sales, Riviana renovated its plant so that the plant could mill a type of rice that was not banned in Europe. Riviana calculates its losses from decreased sales for four months at approximately $600,000. The renovations are estimated to have cost approximately $2 million. Riviana does not claim lost profits for the period after it renovated the Brinkley plant.

Under Arkansas law, the general rule in tort cases is that plaintiffs may recover the costs of reasonable attempts to mitigate their losses. *See Marshall School Dist. v. Hill*, 939 S.W.2d 319, 321-22 (Ark. Ct. App. 1997); Brill, Arkansas Law of Damages § 4:6 (2009) ("If the expenditures were reasonable when made, they are recoverable, even if they do not succeed in minimizing damages."). This

rule follows naturally from a plaintiff's duty to mitigate. *Bill C. Harris Const. Co. Inc. v. Powers*, 554 S.W.2d 332, 336 (Ark. 1977). The defendant bears the burden of proving that plaintiff is not entitled to the costs of mitigation. *Quality Truck Equipment Co. v. Layman*, 912 S.W.2d 18, 20-21 (Ark. Ct. App. 1995). The "question of damages, both as to measure and amount, is a question of fact." *Id.* Riviana has produced evidence that it spent money in mitigation, and this evidence creates a fact question sufficient to preclude summary judgment.

Aside from this question of fact, Bayer's argument is also legally incorrect. Bayer essentially argues that Riviana suffered no loss because it has successfully paid itself back for its renovations by selling rice. Bayer cites no authority supporting its argument that a plaintiff who successfully mitigates is not entitled to the reasonable costs of mitigation.[8] The lack of support for Bayer's argument is understandable since Bayer's position is the opposite of the actual rule. Courts do not generally offset either losses from the period before the plaintiff is able to

---

[8] None of the cases cited by Bayer stand for the proposition that a plaintiff cannot recover the costs of mitigation if the attempt at mitigation is ultimately successful. One of its cases finds that a plaintiff cannot recover from a defendant when the plaintiff has already recovered from the same defendant for the same injury. *See Triumph Trucking, Inc. v. Southern Corporate Ins. Managers, Inc.*, 226 S.W.3d 466 (Tex. Ct. App. 2006). The remainder of its cases merely state that a plaintiff has a duty to mitigate. *See Pulaski Bank and Trust Co. v. Texas American Bank/Fort Worth, N.A.*, 759 S.W.2d 723 (Tex. Ct. App. 1988).

mitigate or the costs of mitigation with the plaintiff's subsequent profits or earnings. *See Bannister v. Bemis Co., Inc.*, 556 F.3d 882, 886-87 (8th Cir. 2009); *Marshall School Dist.*, 939 S.W.2d at 321-22. For instance, in a claim for lost wages, the court did not offset an employee's claim for a period of unemployment with the amount earned after the employee found a new job. *See Bannister*, 556 F.3d at 886-87. Instead, an employee's earnings from a new job are only considered if the employee is claiming damages for the difference between the old salary and the new salary – that is, if plaintiff is seeking damages *after* successfully mitigating. *See Marshall School Dist.*, 939 S.W.2d at 321-22. And even in such a case, the costs of mitigation are still recoverable, independent of any subsequent earnings. *See id.*

### 6.    Punitive Damages

As it did in the two earlier bellwether trials, Bayer seeks summary judgment on the claim for punitive damages. I will deny this request for summary judgment for the reasons stated earlier.[9]

## B.    Riviana's Motions for Summary Judgment

Riviana's motions for summary judgment raise issues that were also part of

---

[9] October 9, 2009 order [1604] at p. 40-43; December 9, 2009 order [#2075] at p. 20-22.

the first two bellwether cases.  Riviana asks the Court to rule that LSU and Dr.
Lindscombe acted as Bayer's agents, that the Bayer entities are jointly and
derivatively liable, and to dismiss some of Bayer's affirmative defenses.  For the
reasons stated below and in my previous rulings, these motions are granted in part
and denied in part.

### 1. <u>Agency Status of LSU and Lindscome</u>

At the first two producer bellwether trials, I ruled as a matter of law and
instructed the jury, that LSU and Dr. Steven Lindscome were acting as Bayer's
agents and on Bayer's behalf when they handled LLRICE.  Riviana asks me to
reach the same conclusion here, because the evidence is the same.  Bayer
maintains its previous arguments that doing so is error, and that a factual dispute
remains regarding the agency status of LSU and Lindscome.  I continue to believe
that my trial rulings were correct, and so I will grant this motion for summary
judgment.

### 2. <u>Derivative Liability, Affirmative Defenses</u>

Riviana filed three summary judgment motions that essentially reassert
motions on which I have previously ruled regarding Bayer's affirmative defenses
and derivative and successor liability.  Bayers' responses likewise reassert its
previous arguments.  I will incorporate my previous rulings, for the same reasons

stated in my summary judgment orders in the first two producer bellwether trials.[10]

## C.   Riviana's *Daubert* Motions

Riviana moves to exclude the testimony of Bayer's experts Ronnie Helms, Alan McHughen, and Quentin Mimms.  I will allow Helms and McHughen to testify to the same extent I allowed their testimony in the two producer bellwether trials.

Quentin Mimms is a forensic accountant whom Bayer has designated to testify about Riviana's damage claims.  Mimms' report is primarily a critique of the report prepared by Riviana's damages expert, Lisa Ahern, but Riviana has now withdrawn its designation of Ahern, and it does not intent to call her as a witness. Riviana argues that Mimms should not be allowed to testify because Ahern will not testify, and it also argues that his damages opinions pose impermissible legal conclusions.

Rule 702 permits expert testimony if "it will assist the trier of fact in understanding the evidence or to determine a fact in issue."  Fed. R. Evid. 702. The key inquiries are the (1) factual basis of the opinion, (2) reliability of the method and application, and (3) the relevance of the testimony.  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

---

[10] October 9, 2009 order [#1604]; December 9, 2009 order [#2075].

- 22 -

Regardless of whether Ahern testifies, Riviana must present evidence of its damages in some form at trial, and assuming it does so, Bayer will be entitled to attempt to counter that evidence. Without knowing what evidence Riviana will produce, I cannot say at this time that none of Mimms' testimony is admissible.

I have severe doubts, however, about whether Mimms should be allowed to testify regarding his theory that Riviana's costs of converting its Brinkley plant should be offset by its subsequent profits from its sale of rice to third parties. "A trial court may . . . exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990). As noted above, the law generally allows a party to seek as damages the costs of mitigation, and so Mimms' proposed testimony may be contrary to the law. Again, however, until I hear Riviana's damages evidence, I cannot be sure that Mimms' proposed testimony is wholly inadmissible, and so I will deny Riviana's motion.

Accordingly,

**IT IS HEREBY ORDERED** that the Bayer defendant's motion for summary judgment [#2142] is granted only to the extent set out above and is denied in all other respects, except that the motion remains pending to the extent it

- 23 -

relates to the claims for indemnity of Riceland and Producers [brief # 2144].

**IT IS FURTHER ORDERED** that Riviana's motion for summary judgment on successor, general partner, and agency status [#2122] is denied, although the facts deemed established for trial earlier are deemed established for this trial as well.

**IT IS FURTHER ORDERED** that Riviana's motions for summary judgment on affirmative defense # 12 (compliance with regulations) [#2123] and affirmative defenses #3 and #13 (intervening cause and state of the art) [#2124] are granted.

**IT IS FURTHER ORDERED** that Riviana's motion for summary judgment on agency status of LSU and Lindscome [# 2126] is granted.

**IT IS FURTHER ORDERED** that Riviana's motion to exclude testimony of Ronnie Helms and Alan McHughen [#2121] is denied except as previously granted.

**IT IS FURTHER ORDERED** that Riviana's motion to exclude the testimony of Quentin Mimms [#2115] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of March, 2010.